UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SHAHAB SAQIB,

                                                  **MEMORANDUM & ORDER**

                                                  **07 CV 3052 (NGG)(LB)**

Plaintiff,

-against-

STEIN DEVISSER & MINTZ, P.C., CPAs,
and JOHN AND JANE DOE,

Defendants.
----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Pro se plaintiff Shahab Saqib brings this employment discrimination action against defendant Stein de Visser & Mintz, P.C. ("SDM") alleging retaliatory termination, harassment, and discrimination in employment privileges and compensation, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq. For the reasons below, SDM's motion for summary judgment on each claim is GRANTED.

I.    **STANDARD**

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and an issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." Anderson v. Liberty Lobby,

1

Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, "the court must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).

Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Although courts in employment cases must be "especially chary in handing out summary judgment . . . because in such cases the employer's intent is ordinarily at issue," Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 87 (2d Cir. 1996), a grant of summary judgment is proper "when no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight," Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994).

Because Saqib is a pro se litigant, the court "read[s] his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

## II. DISCUSSION

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII is not a blanket proscription on

adverse conduct by employers; by its very terms, the statute prohibits only discrimination that is undertaken "because of" an individual's membership in a protected group.

Saqib is a Muslim male born in Pakistan. He alleges that SDM discriminated against him by subjecting him to a hostile work environment; terminating him in retaliation for complaining about harassment; and denying him promotions, training opportunities, raises, bonuses, and overtime payments. The evidence that Saqib proffers in support of these claims, including a supporting affidavit, deposition testimony, work emails, and sworn statements in his EEOC charge and civil complaint, fails to raise a colorable inference that any of SDM's actions were motivated by Saqib's race, color, religion, or national origin. As detailed below, the absence of any evidence that Saqib was discriminated against on the basis of his membership in a protected class is fatal to his Title VII claims.

### A. Hostile Work Environment

SDM is an accounting firm that provides a variety of financial services. Saqib worked at SDM as a staff accountant from November 22, 2005 to August 8, 2006. (Declaration of Charles A. Martin ("Martin Decl.") (Docket Entry # 22) Ex. C (deposition of Shahab Saqib) ("Saqib Dep.") at 25, 37.) Saqib claims that during this time, SDM employees subjected to various forms of harassment. According to Saqib, three SDM employees "stalked" him by "suddenly appear[ing] to collide" with him in the hallways and walking with their hands "a little bit raised on the right or left side." (Pl. Opp. Aff. (Docket Entry # 28) ("Saqib Aff.") at 8; Saqib Dep. at 74-80.) Additionally, one of these employees came into Saqib's office repeatedly throughout the day to place documents into file cabinets and sometimes banged the cabinets shut with his foot, causing a loud noise. (Id. at 78.) Saqib also alleges that his boss, Keith de Visser, told him not to go outside for lunch and questioned Saqib's choice of certain types of food. (Id. at 94-96.)

3

On three or four occasions, SDM's receptionist asked Saqib to perform menial tasks, such as delivering messages or carrying boxes to other employees, which Saqib claims was done intentionally to demean him. (Id. at 97-98.)

On one occasion during the summer, Saqib arrived at SDM wearing an overcoat. According to Saqib, one of his coworkers told him that he looked like a terrorist and that if he went to jail he would be given free meals and accommodations. (Id. at 103-05; Martin Decl. Ex. A (Complaint) (hereinafter, "Complaint"), at 6.)[1] Saqib did not complain to anyone at SDM about this comment. (Saqib Dep. at 104.) Saqib also states that one of his coworkers listened to a talk radio program at work in which the hosts discussed "inappropriate, racial material" using "derogatory language regarding individuals, groups, ethnicities and any subject which comes to hand." (Id. at 63-64; Saqib Aff. at 9-10.)

In his submissions and deposition testimony, Saqib attributes much of this alleged harassment to a perceived international government conspiracy, involving the leaders of the United States and Pakistan as well as numerous subordinate agencies, which he claims is attempting to manipulate him through surveillance and overt harassment.[2] (See, e.g., Saqib Dep. at 18, 154; Complaint at 5; Saqib Aff. at 5.) Saqib claims that all of SDM's employees were working cooperatively with the government and receiving instructions through implanted hearing devices, and connects the harassment at SDM to a larger pattern of harassment and intimidation by strangers on the streets and in the subways. (Saqib Dep. at 46-47, 65-67, 106, 160-62).

To succeed on a hostile work environment claim under Title VII, a plaintiff must establish, inter alia, that he was subject to harassment so severe or pervasive that it altered the

---

[1] The only complete copy of the Complaint in the record appears to be the one included as Exhibit A to the Martin Declaration. Accordingly, the court refers to this exhibit when citing to the Complaint.
[2] This court previously dismissed a suit brought by Mr. Saqib against various United States government agencies, in which he made substantially similar (albeit considerably more detailed and voluminous) allegations. See Saqib v. Fed. Bureau of Investigation et. al., 07-cv-3998 (NGG) (Oct. 30, 2007) (dismissing plaintiff's in forma pauperis claim as factually frivolous).

4

conditions of his employment and created an abusive work environment. Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002). The plaintiff must prove that he "subjectively perceived the environment to be abusive, [and] that the environment was objectively hostile and abusive." Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006). "Isolated, minor acts or occasional episodes" do not constitute an objectively hostile and abusive environment. Brennan v. Metropolitan Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999); see also Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("[W]e have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment"). Therefore, a plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quotation and citation omitted).

Critically, a plaintiff "must also demonstrate that [he] was subjected to the hostility because of [his] membership in a protected class." Brennan v. Metropolitan Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999). "Title VII is not a 'general civility code for the American workplace;' it prohibits only harassment that is discriminatory." Marshall v. N.Y. City Bd. of Elections, 322 Fed. Appx. 17, 19 (2d Cir. 2009) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)).

Here, Saqib has not submitted evidence from which a rational trier of fact could find that the conduct he experienced was sufficiently severe or pervasive to alter the conditions of his employment, or that it was on account of his race or religion. Although the alleged "stalking," loud shutting of drawers, instructions not to go out for lunch, comments about food choices, and requests to perform physical tasks may have legitimately bothered Saqib, they do not rise to the

objective severity necessary to constitute a hostile work environment. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 23 (1993). Nor, as Saqib essentially admits, is there anything in the record to suggest that these actions were motivated by racial or religious animus. (See Saqib Dep. at 172; Saqib Aff. at 7.) Although Saqib alleges that the radio program his coworker listened to contained racially derogatory material, he does not allege that the coworker decided to play the program in Saqib's presence on account of his race or religion, or even that the offending language was directed at Muslims, Arabs, or Pakistanis. Cf. Wells-Williams v. Kingsboro Psychiatric Ctr., 2007 U.S. Dist. LEXIS 23727, at *18-19 (E.D.N.Y. Mar. 30, 2007) (allegations of continuous sexual conversations between plaintiff's supervisor and a coworker not probative of a hostile work environment). Finally, even assuming arguendo that the comment by Saqib's coworker that he looked like a terrorist is indicative of discriminatory animus, that is not the sort of "extremely severe" isolated incident that can support a finding of altered working conditions. Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity") (quotation and citation omitted); cf. Richardson v. N.Y. State Dept of Corr. Servs., 180 F.3d 426, 437 (2d Cir. 1999) (citing sexual assault as an example of a single incident that would be sufficient to alter terms and conditions of the victim's employment). Accordingly, SDM is entitled to summary judgment on Saqib's hostile work environment claim.

### B. Retaliatory Termination

Saqib claims that he was terminated in retaliation for complaining about the harassment described in Section II.A, above. Because Saqib has failed to make out a prima facie case of retaliation, SDM is entitled to summary judgment on this claim.

6

The court analyzes Saqib's Title VII retaliation claim using the familiar McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that test, Saqib must first establish a prima facie case of retaliatory termination, at which point the burden shifts to SDM to articulate a legitimate, non-discriminatory reason for his discharge. If SDM satisfies this burden, the burden shifts back to Saqib to demonstrate that SDM's stated reason is in fact a pretext for discrimination. Cruz v. Coach Stores, Inc., 202 F.3d 560, 567 (2d Cir. 2000).

To establish a prima facie case of retaliation, a plaintiff must show that (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee was terminated; and (4) there was a causal connection between the protected activity and the termination. Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996). "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz, 202 F.3d at 566. In order to satisfy the first prong, a plaintiff must show that he had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988) (quotation omitted). It is on this first prong that Saqib's claim founders.

As detailed above in Section II.A, the various instances of "harassment" alleged by Saqib do not constitute statutorily prohibited discrimination. The innocuousness of the alleged behavior, as well as the absence of any evidence that it was done with discriminatory intent, precludes a finding that Saqib could have reasonably believed that his coworkers' actions were illegal. See Galdieri-Ambrosini v. National Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998) (plaintiff could not have reasonably believed herself to be victim of illegal discrimination

7

where alleged harassment consisted of ordinary workplace activities and there was no indication that actions were based on her gender). The only incident that could raise a colorable inference of illegality is the comment that Saqib looked like a terrorist in his overcoat. But see Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) (no reasonable person could believe that a single sexually suggestive comment violated Title VII). Saqib admitted at his deposition, however, that he never mentioned or complained about this incident to anyone at SDM. (Saqib Dep. at 104.) Saqib has therefore failed to establish that he was engaged in protected activity prior to his termination, and SDM is entitled to summary judgment on his retaliation claim.

### C. Compensation and Training

Saqib alleges that SDM discriminated against him by denying him training opportunities, raises, and overtime and bonus compensation.[3]

In order to make out a prima facie case of disparate treatment, Saqib must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for, or entitled to, the employment benefit in question; (3) he was denied the benefit; and (4) the denial of the benefit occurred under circumstances giving rise to an inference of discrimination. Cruz, 202 F.3d at 567. This four-part test applies, with minor variations, to claims that an employee was denied compensation and training. See Belfi v. Prendergast, 191 F.3d 129, 140 (2d Cir. 1999) (compensation disparities); Silva v. Peninsula Hotel, 509 F. Supp. 2d 364, 382 (S.D.N.Y. 2007) (denial of training opportunities). There is no variation, however, in the requirement that the plaintiff demonstrate that the challenged action was taken under circumstances giving rise to an

---

[3] The Complaint lists "Discrimination in Hiring and Promotions" as one of the grounds for relief. (Complaint at 2.) Apart from this cursory mention, Saqib has made no relevant allegations in any of his filings and has produced no evidence in support of such a claim, and he does not pursue or defend this claim in his opposition papers. Accordingly, to the extent that Saqib can be said to have made out a discriminatory hiring and promotion claim under Title VII, the court deems it abandoned. Santiago v. City of New York, 2009 U.S. Dist. LEXIS 30371, at *36 n.19 (E.D.N.Y. Mar. 31, 2009); Sorto-Romero v. Delta Int'l Machinery, 2007 U.S. Dist. LEXIS 71588, at *24-45 (E.D.N.Y. Sept. 24, 2007).

8

inference of discrimination. Circumstances contributing to a permissible inference of discriminatory intent include, e.g., remarks by decisionmakers that are indicative of discriminatory animus toward the plaintiff or members of his protected class, preferential treatment given to employees outside the protected class, or the suspicious timing or sequence of events leading to the adverse action. See Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996). "The question is whether [the plaintiff] has met his de minimis burden of showing circumstances that would permit a rational finder of fact to infer invidious discrimination." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

Here, Saqib has failed to adduce any evidence to suggest that the alleged denials of training opportunities and compensation were the product of discriminatory animus. With respect to compensation, Saqib does not allege that other employees received the salaries, bonuses, and overtime pay that he believes he was entitled to, nor does he point to any discriminatory remarks by decisionmakers or suspicious sequences of events. To the extent that Saqib does posit a motive for SDM's actions, he ascribes them to the aforementioned international governmental conspiracy, which he believes is controlling his finances. (Saqib Dep. at 39, 91.)

With respect to the training claim, Saqib's deposition testimony suggests that a female Caucasian employee was reimbursed for an accountancy training course while Saqib was not. (Saqib Dep. at 54-56.) SDM states, however, and Saqib does not controvert, that the female employee was a bookkeeper rather than an accountant, and therefore was differently situated from Saqib and had a genuine need for the training that Saqib lacked. (Martin Decl. Ex. R (at Ex. G).) Saqib has not put forth evidence that any accountants like himself were reimbursed for comparable training courses. Because a rational factfinder would be unable to infer invidious

discrimination on these facts, SDM is entitled to summary judgment on Saqib's disparate-treatment claims.

## III. CONCLUSION

For the reasons stated above, SDM's motion for summary judgment is granted in its entirety. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2009

s/Nicholas G. Garaufis

/NICHOLAS G. GARAUFIS
United States District Judge